**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| PEGGY RUTH HUGHES, | Case No. 1:12-cv-394 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Peggy Ruth Hughes filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for Disability Insurance Benefits ("DIB") and for Supplemental Social Security ("SSI") in June 2008, alleging disability due primarily to depression and fibromyalgia, with an onset date in May 2004. After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in July 2010, at which Plaintiff was represented by counsel. At the hearing, ALJ Christopher McNeil

1

heard testimony from Plaintiff, a medical expert, and an impartial vocational expert. After the evidentiary hearing, Plaintiff amended her alleged onset date to February 2007. (Tr. 314). On October 4, 2012, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled.

The record reflects that Plaintiff was 51 years old at the time of the ALJ's decision. She graduated from high school, and performed data entry work from 1984 through June 2000. (Tr. 229, 233). She is insured for disability purposes only through March 31, 2009 (Tr. 14).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "fibromyalgia, osteoarthritis, major depression, anxiety related disorder and personality disorder, [and] substance addiction disorder." (Tr. 14). In addition to Plaintiff's severe impairments, the ALJ noted that Plaintiff had non-severe impairments of hypertension, esophageal spasm, hypercholesterolemia and GERD (gastroesophageal reflux disease)." However, none of the latter conditions interfere with Plaintiff's ability to work. (Tr. 15).

`    The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.). Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of medium work, described as follows:

> The claimant can occasionally lift fifty pounds, can frequently lift twenty-five pounds and can push or pull twenty-five pounds with hand or foot controls. The claimant can sit, stand and walk for six hours each in an eight-hour workday. She cannot more than occasionally use ladders,

> ropes or scaffolds, cannot more than frequently use ramps or stairs, and cannot more than frequently balance, stoop, kneel, crouch or crawl. Due to the claimant's mental limitations, she is limited to understanding, recalling and carrying out simple instructions; can concentrate and persist in two-hour segments; can function in an object-focused setting; and can adapt to routine changes with not more than occasional contact with supervisor, coworkers and the general public. Finally, the claimant's job stress must be limited by having no production quotas or strict time standards.

(Tr. 17). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff would be able to return to her past relevant work as a data entry clerk (Tr. 21). Alternatively, he determined that other jobs existed in significant numbers in the national economy that Plaintiff could perform.[1] (Tr. 21-22). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to either DIB or SSI. (Tr. 22).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to appropriately weigh the medical evidence;[2] (2) by improperly evaluating Plaintiff's credibility; and (3) by generally disregarding evidence of disability.[3]

---

[1] Although the ALJ determined that Plaintiff could perform work at the medium level, the jobs that the VE testified that Plaintiff could perform all exist at the light and sedentary levels.

[2] Plaintiff's statement of errors characterizes the error as a failure to give appropriate weight to the opinions of treating and examining physicians. (Doc. 12 at 2). However, the body of Plaintiff's memorandum clarifies that she generally challenges the ALJ's assessment of nearly all medical source opinions, particularly that of the non-examining medical expert, Dr. Bernanke, who testified via telephone at the evidentiary hearing. (*See id.*, at 11-13).

[3] Plaintiff's third listed error generally restates elements of the first two errors. The Court therefore has addressed the third error within the discussion of the prior two more specific errors.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

### 1. Alleged Improper Evaluation of Medical Evidence

#### a. Medical Expert Harold Bernanke, M.D.

In her post-hearing memorandum and before this Court, Plaintiff argues that the ALJ should have accepted the opinion of the consulting physician who testified telephonically at the evidentiary hearing as a medical expert, Dr. Harold Bernanke. Dr. Bernanke testified that, while semi-retired, he continues to work part-time in a cardiology clinic, and is "familiar" with the Listing of impairments. However, some of his testimony made clear that he was not entirely familiar the regulatory framework as it pertains to fibromyalgia.

For example, when the ALJ inquired as to whether Plaintiff meets or equals any Listing, Dr. Bernanke replied first: "Well, there is nothing in the [inaudible] --this book that I have about – you know, from Social Security --…I wonder if they just [inaudible] about fibromyalgia. I believe there is a listing on it, but I don't have that handy." (Tr. 92). Dr. Bernanke goes on to opine that Plaintiff "would satisfy [the] *diagnosis*" of fibromyalgia, in that her records seem to meet the criteria for that diagnosis. (*Id.,* emphasis added). In reality, there is no Listing for fibromyalgia. Moreover, meeting the criteria for a "diagnosis" is a far cry from meeting or equaling a "Listing," which carries with it a regulatory presumption of disability. Further evidencing some confusion with the Listings, Dr. Bernanke goes on to review additional symptoms such as Plaintiff's

6

"repeated abdominal pain," but opines that "she would not meet the – meet the listing because there isn't a specific listing for it."[4]

Plaintiff concedes in her Statement of Errors that there is no specific Listing for fibromyalgia, but now argues that Dr. Bernanke "*appeared* to be saying" that Plaintiff has a condition that "*could* be 'medically equivalent' to the most similar Listing under 20 CFR 404.1526(b)(2)." (Doc. 12 at 11, italics added). However, Plaintiff fails to identify what Listing her condition might be "equivalent" to.[5] Moreover, as the above quotation clearly illustrates, Dr. Bernanke was not testifying to any type of "medical equivalency."

Plaintiff also argues that the ALJ erred in assessing Plaintiff's fibromyalgia as non-disabling, based upon Dr. Bernanke's testimony that a reduction in the number of documented "tender points" does not indicate an improvement in symptomology. Again, however, Plaintiff's argument mischaracterizes Dr. Bernanke's testimony. The ALJ initially asked about the diagnosis of fibromyalgia in reference to Plaintiff's symptoms. Dr. Bernanke testified that the diagnosis requires a certain number of "tender points," but he was uncertain about the details, a fact perhaps not surprising given his background in cardiology:

> A. But they have 11 over 18? I don't remember the exact number, but it's something like – I don't – I really don't have that at my fingertips. It's supposed to be a certain number of tender points and that's a fairly high number and those really did – not by pushing hard, but just touching the areas.

---

[4] In fact, Listing 5.01 *et seq.* includes multiple Listings concerned with the digestive system. However, Plaintiff did not argue below, and this Court finds no evidence, that Plaintiff's abdominal pain would actually meet or equal any Listing.

[5] Similarly, at the evidentiary hearing, counsel replied "I don't know" when asked whether Plaintiff met or equaled any Listing. (Tr. 60).

> Q. In your testimony earlier this morning, you mentioned, in an earlier diagnosis, a number of 16 out of 18 tender points.
>
> A. Yeah, that was—that was the initial diagnosis….

(Tr. 97).

The ALJ then inquired about records showing a marked decrease in the number of tender points found over time.

> Q. What's the medical significance to the change in the number? What's happening here?
>
> A. *I can't say.* I mean, there's [inaudible] in the fibromyalgia.

(*Id.*, emphasis added). Because the transcript reflects "inaudible" the testimony is unclear, though in context, the missing words appear to be "a decrease." In any event, Dr. Bernanke goes on to explain that he has *does not know* the significance of the decrease in tender points:

> A. I can't tell you more than that. …[A]s a matter of fact, *there were some examinations where they didn't find any.*

(*Id.*, emphasis added). Somewhat contrarily, Dr. Bernanke later explains, "I don't think you can equate that [reduction from 16 to 11 tender points] with improvement of symptomology….That's a diagnostic finding only." (Tr. 98). Taken in context, it is clear that Dr. Bernanke was simply clarifying that he did not know the medical significance of a reduction in the number of trigger points from 16 to 11, cautioning that whether that diagnostic finding correlated with a reduction in symptoms was unclear to him. In short, Dr. Bernanke's testimony does not support Plaintiff's position that her fibromyalgia symptoms were disabling at all times.

8

The undersigned finds no error in the ALJ's thorough and well-supported evaluation of all of Dr. Bernanke's testimony.  The ALJ quoted from a Social Security Memorandum that explains that fibromyalgia, as defined by the American College of Rheumatology, requires "widespread pain in all four quadrants of the body for a minimum duration of 3 months and at least 11 of the 18 specified tender points which cluster around the neck and shoulder, chest, hip, knee, and elbow regions." (Tr. 15-16). The ALJ properly accepted Dr. Bernanke's testimony that Plaintiff's fibromyalgia constitutes a "severe" and medically determinable impairment, but was justified in rejecting Dr. Bernanke's confusing and inaccurate statement that her fibromyalgia "diagnosis" equals a Listing.

### b.  W. Jerry McCloud, M.D.

Plaintiff additionally argues that the ALJ improperly evaluated the RFC assessment of non-examining consultant, W. Jerry McCloud, M.D.  The ALJ gave Dr. McCloud's RFC form "significant weight."  Plaintiff argues that was error, because as an orthopedic surgeon, Dr. McCloud could not fairly evaluate the degree to which Plaintiff's fibromyalgia was disabling.

The undersigned finds no error in the ALJ's evaluation of Dr. McCloud's RFC opinions.  Other than the fact that he is not a rheumatologist, there is no evidence (unlike portions of Dr. Bernanke's testimony) that Dr. McCloud was not familiar with fibromyalgia. Plaintiff's suggestion that Dr. McCloud "probably" relied upon the report of symptoms listed on Plaintiff's disability application, in finding her symptoms to be "attributable to" and "not disproportionate to" her diagnoses (Tr. 265-268), is pure

speculation. As the Defendant points out, it is more likely that Dr. McCloud's conclusion on that portion of the RFC form was based upon his review of Plaintiff's medical records, including Plaintiff's report of much less extreme symptoms and limitations to her physicians.

### c. David Chiappone, Ph.D.

Next, Plaintiff attacks the ALJ's decision to give "great weight" to the mental RFC of consulting psychologist David Chiappone, Ph.D. Plaintiff does not identify any specific conclusions made by Dr. Chiappone with which she disagrees, but instead complains that he "did no psychological testing, only a clinical interview." However, the opinions of psychologists are frequently based upon data gathered from the clinical interview process. In fact, Dr. Chiappone's report reflects that he administered at least two psychological tests as a part of that process. (Tr. 482, noting sensorium and cognitive functioning testing). Dr. Chiappone indicated that Plaintiff's GAF score was 58, indicating moderate symptoms or moderate difficulty in social or occupational functioning. (Tr. 20).

The ALJ explained that Dr. Chiappone's conclusions were based upon objective medical evidence of record and were consistent with the evidence of Plaintiff's activities of daily living. (Tr. 20). Plaintiff argues that the ALJ erred by failing to identify precisely which objective evidence agreed with Dr. Chiappone's conclusions, or which daily activities were consistent with that consultant's opinions. However, Dr. Chiappone's report itself includes a lengthy summary of Plaintiff's activities, (Tr. 483), and the ALJ's analysis also details numerous inconsistencies between Plaintiff's allegations and her

10

reported activity level.  Additionally, the ALJ summarizes relevant objective medical evidence.  The ALJ was not required to reiterate each piece of evidence in the portion of his opinion that finds Dr. Chiappone's conclusions to be entitled to "great weight."

### d.  Consulting versus Treating Psychological Sources

Last, Plaintiff argues that the ALJ should have given greater weight to the joint opinions of treating psychiatrist Carlos Cheng, M.D., and therapist Ruth Halicks, than to the assessment of consulting psychologist Frank Orosz, Ph.D. and Arecilis Rivera, Psy.D.[6] Plaintiff claims to be disabled in part from her mental impairments, including depression and anxiety.

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(d)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.*; *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

---

[6]Dr. Rivera affirmed the mental RFC opinion of Dr. Orosz.

11

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires "the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(d)(2).  "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

The ALJ found that Plaintiff suffers from "severe" anxiety, depression, and personality disorders, as well as a substance addiction disorder.  However, the ALJ determined that Plaintiff's mental impairments did not meet or equal any mental health Listings, because she does not have two or more "marked" restrictions in activities of

daily living, in maintaining social functioning, or in maintaining concentration, persistence or pace, and she has not suffered repeated episodes of decompensation of extended duration (meaning at least three episodes within a year, lasting a period 2 weeks or more). (Tr. 16). These criteria are commonly known as the "Paragraph B Criteria" of the Listings.

The ALJ's conclusion that Plaintiff does not meet a listing under the Paragraph B criteria is supported by substantial evidence. Plaintiff's treating psychiatrist, Dr. Carlos Cheng, her therapist Ruth Halicks,[7] and two state agency consulting psychologists all **agreed** that Plaintiff suffers from no more than mild to moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence or pace. (Tr. 488-501, 581, 700-714).

If a claimant does not satisfy the "B Criteria," she may still satisfy the criteria for a Listed mental impairment if she meets the "C Criteria." Plaintiff argues that she satisfied the "Paragraph C" criteria of Listing 12.04 (Affective Disorders) based upon the form completed by Dr. Cheng and Ms. Halicks, who apparently suggested that Plaintiff has experienced repeated episodes of decompensation for extended duration.[8] Contrary to

---

[7]Ms. Halicks' signature line bears a typed reference to "Ph.D." on the form, but her signature clearly indicates that she is a Licensed Clinical Social Worker (LISW) who holds a master's degree in social work, as opposed to a doctorate in clinical psychology. The distinction can be important in that only a doctoral level psychologist or medical doctor may be considered as a "treating source." The ALJ (erroneously) refers to Ms. Halicks as "Dr. Halicks." However, because the RFC assessment was jointly signed by Dr. Cheng, the distinction is irrelevant on the record presented.

[8]The undersigned has been unable to locate any page of the form completed by Dr. Cheng and Ms. Halicks that clearly opines that Plaintiff meets the C criteria. Instead, the page referencing Listing 12.04, (Tr. 719), indicates only a "rule out" for bipolar disorder, not that Plaintiff has that disorder or otherwise meets that Listing. In a separate section, (Tr. 727), the treating sources opine that to the extent that Plaintiff may suffer from bipolar disorder under 12.04, she has **not** had prior episodes of decompensation, but could be expected to decompensate in the future with "a minimal increase in mental demands or change in the environment." The same page reflects "insufficient evidence" to establish C criteria for

13

Dr. Cheng and Ms. Halicks, consulting Drs. Orosz and Rivera (as well as Dr. Chiappone) did not find Plaintiff disabled under the "C Criteria." Dr. Cheng and Ms. Halicks completed their RFC form in July of 2010, based their assessment of Plaintiff's status as of January 2009, at a time when Plaintiff had been treating with them for approximately 11 months. (Tr. 700).

The ALJ rejected the joint opinion of Dr. Cheng and Ms. Halicks to the extent that it implied that Plaintiff met the "C Criteria." The ALJ specifically found:

> insufficient evidence to support the finding that there were three episodes of decompensation….The finding that the C criteria is met contradicts the opinion of other treating sources, is not supported by the objective medical evidence of record, and is inconsistent with the evidence of the claimant's activities of daily living. Further the undersigned recognizes that [Dr. Cheng and Ms. Halicks] are not familiar with the SSA regulations, as evidenced by the unsupported report of three episodes of decompensation.

(Tr. 20). The ALJ clearly satisfied the regulations by providing "good reasons" for failing to give the Dr. Cheng's "Paragraph C" opinion controlling weight. See 20 C.F.R. §404.1527(d)(2); accord *Blakley*, 581 F.3d at 406-407; Soc. Sec. Rul. 96-2p. In fact, Plaintiff herself reported that she had no history of outpatient or inpatient treatment, with the exception of being hospitalized for a "nervous breakdown" at least fifteen years ago. (Tr. 17). In this appeal, Plaintiff cites no evidence whatsoever that would support a finding that she has experienced repeated episodes of decompensation.

---

Plaintiff's anxiety disorder.

### 2. Evaluation of Plaintiff's Credibility

Although listed second in her Statement of Errors, Plaintiff's memorandum makes clear that her primary complaint is with the ALJ's unfavorable determination of her credibility, including but not limited to the ALJ's assessment of her activities of daily living.

In terms of those activities, the ALJ cited Plaintiff's own statements that "she is able to do light chores, cook meals, she has a driver's license and is able to drive herself to appointments." (Tr. 16). Moreover, Plaintiff is able to care for her own living arrangements, can maintain her personal appearance, manage her own funds, and cooperate with treatment. (*Id.*). The ALJ noted significant inconsistencies between Plaintiff's statements on a "Function Report" completed for the purpose of obtaining social security benefits in November 2008, in which she stated that she was extremely impaired, and the statements made by Plaintiff to her mental health provider in June of 2008. In June, Plaintiff reported that she loves playing games, playing with her grandchildren, and cooking and decorating. She described engaging in leisure activities such as eating out, playing games, watching movies, going to the zoo and the museum, shopping, and going on family vacations. (Tr. 18, citing Tr. 522-523). Moreover, the ALJ pointed out Plaintiff's report to another physician that she walks every day for thirty minutes. (*Id.*). In addition, although Plaintiff testified that her medications do not alleviate her pain, she indicated to her health care provider that her medications are effective in treating her fibromyalgia. (Tr. 19).

15

Based upon these inconsistencies and other evidence in the record, the ALJ found Plaintiff to be "only partially credible," noting the apparent exaggeration of her limitations. (Tr. 18). The ALJ additionally found that Plaintiff has consistently denied abusing alcohol or drugs to some health care providers, but that other evidence in the record contradicts those reports. (Tr. 547). In fact, Dr. Cheng and Ms. Halicks diagnosed Plaintiff with a substance abuse disorder. (Tr. 700, 710).

Plaintiff implies that her report of activities to her mental health provider was based upon a historical recall of things she used to enjoy doing, rather than a contemporaneous record. However, examination of the record provides no support for that creative interpretation. (*See* Tr. 522). In fact, Plaintiff's hearing testimony implied that, since moving in with her daughter and grandchildren, she enjoys caring for her grandchildren while her daughter is at work. (Tr. 64-65 and 73, describing how she makes her grandchildren breakfast, takes care of them, and watches them play).

Plaintiff further argues that the ALJ erred by misreading a report that she walks 30 minutes per day, when in fact it was only every other day, (compare Tr. 18, citing Tr. 591). Plaintiff complains that at least some of her reports to her physicians supported a more significant pain level. However, the single, minor factual error concerning the number of days that Plaintiff exercises does not require remand when the record is viewed as a whole. Likewise, the fact that some records support Plaintiff's pain complaints does not negate the substantial evidence that supports the ALJ's decision.

Plaintiff additionally contends that a "non-expert ALJ" should not be permitted to "determine what level of drug use constitutes 'abuse'…and how pot-smoking and

16

alcohol use can adversely affect the reliability of a person's description of the effects of [her] symptoms."  (Doc. 12 at 10-11).  But the ALJ properly can and did consider discrepancies in the record in assessing Plaintiff's credibility.  Contrary to Plaintiff's argument, the ALJ did not pay mere lip service to the regulations, but pointed out very specific inconsistencies in the record in assessing Plaintiff's credibility and pain level.  The ALJ also referenced Plaintiff's relatively conservative treatment history, including recommendations for physical therapy and exercise. (Tr. 18-19).  Although Plaintiff suggests that an ALJ is not "qualified" to judge such treatment in the context of an incurable condition like fibromyalgia, evaluation of conservative versus more aggressive treatment, such as referral to a pain specialist, is among the criteria an ALJ can consider. *See* 20 C.F.R. §404.1529(c)(3)(iv)-(v)(ALJ can consider medication and other treatment when assessing credibility).

Last, in her reply memorandum, Plaintiff cites *Rogers v. Com'r of Soc. Sec.*, 486 F.3d 234, 246-249 (6th Cir. 2007), another fibromyalgia case in which the court reversed based in part upon the ALJ's erroneous credibility determination.  However, *Rogers* is clearly distinguishable.  There, the ALJ had refused to acknowledge fibromyalgia as a severe impairment, infusing his entire analysis (including the rejection of Plaintiff's pain complaints) with error.  Here, in contrast to *Rogers*, the ALJ found that Plaintiff did suffer from the "severe" impairment of fibromyalgia.  However, a diagnosis alone does not require an ALJ to accept Plaintiff's complaints of disabling pain without further evaluation.

17

As other Sixth Circuit cases have stated, "[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(quoting 42 U.S.C. §423(d)(5)(A)). In nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability. *See Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Com'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001)(ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds). In addition to Plaintiff's reported daily activities in this case, the ALJ carefully considered the clinical records and objective evidence, all of which failed to support Plaintiff's allegations of disabling pain.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.,* 375 F.3d at 392. It is clear to the undersigned that the ALJ considered the

record as a whole, including but not limited to objective and clinical records, Plaintiff's testimony, and reported daily activities, in assessing Plaintiff's subjective reports of incapacitating pain. The ALJ's determination of credibility is easily upheld based on the record in this case.

As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). Because substantial evidence supports the functional limitations found by the ALJ, his failure to include any additional limitations based upon Plaintiff's complaints of disabling pain does not constitute reversible error. *See also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**

　　　　　　　　　　　　　　　　　　　　 */s Stephanie K. Bowman*
　　　　　　　　　　　　　　　　　　　　Stephanie K. Bowman
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PEGGY RUTH HUGHES,  Case No. 1:12-cv-394

    Plaintiff,  Barrett, J.
                                                               Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).