UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PEGGY RUTH HUGHES,                                         Case No.: 1:12-cv-394

        Plaintiff,                                         Barrett, J.
                                         Bowman, M.J.

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

This matter is before the Court on the Report and Recommendation of the Magistrate Judge.  (Doc. 17).  In the Report, the Magistrate Judge recommends that the decision of the Commissioner to deny Plaintiff DIB and SSI benefits be affirmed because it is supported by substantial evidence in the record as a whole.  Plaintiff has filed timely objections to the Report.  (Doc. 18).  This matter is now ripe for review.

I.  **SUMMARY OF THE MAGISTRATE JUDGE'S CONCLUSIONS**

The procedural and factual background, as well as the ALJ's conclusions, are fully set forth in the Report, and are incorporated here.  After reviewing the record and the assignments of error raised by Plaintiff, the Magistrate Judge recommended affirming the decision of the Commissioner.  Her recommendation is based on the following conclusions:

1.  The ALJ properly accepted Dr. Bernanke's testimony that Plaintiff's fibromyalgia constitutes a "severe" and medically determinable impairment, but was justified in rejecting Dr. Bernanke's confusing and inaccurate statement that her fibromyalgia "diagnosis" equals a Listing.  (Doc. 17, pp. 6-9).

2.  The ALJ did not err in giving "significant weight" in its RFC formulation to Dr. McCloud's RFC form because other than the fact he is not a rheumatologist, there was no evidence that he was not familiar with fibromyalgia and because it was more likely that Dr. McCloud based his conclusion on the review of

Plaintiff's medical records rather than only on the report of symptoms listed on her disability application.  (Doc. 17, pp. 9-10).

3. The ALJ did not err in giving "great weight" to the conclusions of Dr. Chiappone. (Doc. 17, pp. 10-11).  Contrary to Plaintiff's assertions, the report reflected an administration of at least two psychological tests, and he sufficiently explained the Plaintiff's activities, the inconsistencies, and the relevant objective medical evidence.  He did not have to reiterate each piece of evidence in the portion of the opinion that finds Dr. Chiappone's conclusions are entitled to "great weight."

4. The ALJ did not improperly weigh the opinions of treating psychiatrist Carlos Cheng, M.D. and therapist Ruth Halicks.  (Doc. 17, pp. 11-14).  Specifically, the Magistrate Judge determined that the ALJ's conclusion that Plaintiff did not meet a listing under the Paragraph B criteria was supported by substantial evidence and the ALJ provided good reasons for failing to give the Paragraph C opinion controlling weight.

5. The ALJ did not err in his assessment of Plaintiff's credibility.  (Doc. 17, pp. 15-19).  It is within the province of the ALJ to assess the claimant's credibility based upon the consistency of the subjective complaints with the record as a whole.   The ALJ in this case articulated specific inconsistencies in the subjective complaints, as well as specific inconsistencies in her report of the effect of medicine and the frequency of her substance use.   The ALJ's decision thus reflected a considered decision on her credibility and pain level based upon the record as a whole.

## II.   LEGAL STANDARDS

### A. Objections to the Magistrate Judge's Report

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*; *see also* 28 U.S.C. § 636(b)(1).

General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the magistrate's report has the same effect as would a failure

to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Only specific objections are entitled to *de novo* review under the Magistrate Judge's Act, 28 U.S.C. § 636. *Id.*; *see also Fairfield v. Wacha*, No. 1:07-cv-948, 2008 U.S. Dist. LEXIS 15119, at *4-5 (W.D. Mich. Feb. 28, 2008) (citing *Ferguson v. Comm'r of Soc. Sec. Admin.,* No. 1:07-cv-247, 2008 U.S. Dist. LEXIS 5965 (W.D. Mich. Jan. 28, 2008); *Westbrook v. O'Brien*, No. 1:07-cv-937, 2008 U.S. Dist. LEXIS 5965 (W.D. Mich. Nov. 15, 2007); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986)). The reason for that requirement is that:

> [t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Howard*, 932 F.2d at 509. Each objection to the magistrate judge's recommendation should include how the analysis is wrong, why it was wrong and how *de novo* review will obtain a different result on that particular issue. *Id.* Merely restating arguments previously presented, stating a disagreement with a magistrate judge's suggested resolution, or simply summarizing what has been presented before is not a specific objection that alerts the district court to the alleged errors on the part of the magistrate judge. *Id.* at 508-09; *see also Neuman v. Rivers*, 125 F.3d 315, 323 (6th Cir. 1997), *cert. denied*, 522 U.S. 1030, 118 S. Ct. 631, 139 L. Ed. 610 (1997).

Accordingly, even though Plaintiff incorporates her prior Statement of Specific Errors by reference in her objections, the Court will only consider those objections to the Report that were specifically articulated.

## B. Review of Commissioner's Findings

In reviewing the objections, the Court's review is limited in scope by 42 U.S.C. § 405(g) and generally involves two inquiries, to the extent they are relevant:  (1) whether the findings of the ALJ are supported by substantial evidence; and (2) whether the ALJ applied the correct legal standards.  *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2006); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

The Court also must determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

## III.    ANALYSIS

Plaintiff objects to every conclusion of the Magistrate Judge.  The Court addresses those objections below.

### A.  Medical Testimony of Dr. Harold Bernanke

4

Plaintiff objects on several bases to the Magistrate Judge's conclusion that the ALJ did not err in finding Dr. Bernanke's testimony did not endorse a disabling level of pain that resulted from fibromyalgia.  First, Plaintiff starts her objections by contending that while the Magistrate Judge found that Dr. Bernanke was "not entirely familiar [with] the regulatory framework as it pertains to fibromyalgia" (Doc. 18, p. 3) (citing Doc. 17, p.6), it was actually the ALJ who was unfamiliar with the regulatory framework as indicated by his request to counsel to file a brief supporting his claims prior to the hearing (Doc. 18) (citing Tr. 59-60).  The Court finds that the ALJ's request for prior briefing was reasonable, and does not find that his request demonstrates any lack of understanding of regulatory framework as it pertains to fibromyalgia.  Nor does the Court find any error by the Magistrate Judge in this regard.

Second, Plaintiff contends that the ALJ misinterpreted Dr. Bernanke's testimony as an opinion that Plaintiff's condition equaled a listing for fibromyalgia, even though there is no medical listing for fibromyalgia.  (Doc. 18, pp. 3-4).  The Court disagrees that the ALJ made that limited interpretation of Dr. Bernanke's testimony, as evidenced by the paragraph cited by Plaintiff in her objections.  The ALJ stated that "Harold Bernanke, M.D., the testifying medical expert, opined that the claimant equals the listing for fibromyalgia." (Tr. 15).  He then states that Dr. Bernanke "acknowledged that there is no listing for fibromyalgia."  (Id.)  His decision reflects that he also considered whether absent a listing for fibromyalgia, Dr. Bernanke's testimony could support a finding that Plaintiff met or equaled some other listing.  (Id. at 15-16).  Specifically, the ALJ recognized:

> Dr. Bernanke's testimony established that the claimant has a
> medically determinable impairment, but did not establish that she

5

> *equaled a listing*. . . .The undersigned finds that Dr. Bernanke did not identify elements that must be established in order for this impairment to medically *equal a listing*. Dr. Bernanke did not establish that claimant *met any other listing* . . . . [and] he acknowledged that . . . claimant's conditions are not recognized under any other current listing. The undersigned finds that claimant's fibromyalgia does not medically *equal a listing*.

(Tr. 15-16) (emphasis added). The ALJ's decision thus shows that he considered Dr. Bernanke's testimony more broadly than characterized by Plaintiff in determining whether Plaintiff's conditions met or equaled a listing. After considering that testimony, he determined that Dr. Bernanke did not testify to any medical equivalency, which is supported by the transcript of his testimony. Further, as the Magistrate Judge correctly recognized, Plaintiff has not identified any specific Listing that she believes is equivalent to her condition. As such, the Court finds no error in that regard.

Third, Plaintiff takes issue with the ALJ attributing "great weight" to Dr. Bernanke's testimony for the diagnosis of fibromyalgia, and "no weight" to his testimony for being "medically equivalent to a listing," and providing "no comment" on Dr. Bernanke's opinion of the symptomatic severity of the fibromyalgia condition, despite Dr. Bernanke's statement about "medically determinable physical impairments documented by the medical evidence." (Doc. 18, p. 4) (citing Tr. 86). The Court finds no error in the Magistrate Judge's or the ALJ's assessment of the testimony. Dr. Bernanke plainly determined that Plaintiff had a *diagnosis* of fibromyalgia that constituted a "medically determinable impairment." (Tr. 86-92, 103). Given the clarity of that opinion and the support provided, it was proper for the ALJ to afford great weight to that opinion and to recognize that the medically determinable impairment could reasonably be expected to cause Plaintiff's alleged symptoms. (Tr. 19). However, as the Magistrate Judge correctly points out (Doc. 17, p. 6), a diagnosis of fibromyalgia and a finding of a

medically determinable impairment are not the same as meeting or equaling a Listing that carries with it a presumption of disability.  The Court agrees with the Magistrate Judge's and the ALJ's conclusion that Dr. Bernanke's testimony does not plainly support a finding that Plaintiff's diagnosis and medically determinable impairment met or equaled a Listing.  Specifically, the Magistrate Judge correctly determined that Dr. Bernanke's testimony reflected an unfamiliarity with the regulatory framework as it pertains to fibromyalgia, and his testimony, including particularly his demonstrated lack of knowledge as to the medical significance in a reduction in tender points, does not support a finding that Plaintiff's "medically determinable impairment" also was sufficient to meet or equal a Listing under the regulatory framework.

For those reasons, the Court finds no error, and agrees with the Magistrate Judge that the ALJ properly accepted Dr. Bernanke's testimony that Plaintiff's fibromyalgia constitutes a "severe" and "medically determinable impairment," but was justified in rejecting Dr. Bernanke's unclear testimony as to whether her fibromyalgia "diagnosis" equals a Listing.

### B.  W. Jerry McCloud, M.D.

The ALJ accorded "significant weight" to Dr. McCloud's physical RFC assessment because it is based on the medical evidence of record, is consistent with the credible portion of the claimant's allegations of activities of daily living, and is not contradicted by a treating medical source.  (Tr. 19-20).  The Magistrate Judge concluded that the ALJ did not err in giving "significant weight" to Dr. McCloud's physical RFC assessment because, other than the fact he is not a rheumatologist, there was no evidence that he was not familiar with fibromyalgia and because it was more

likely that Dr. McCloud determined Plaintiff's symptoms were attributable to, but not disproportionate to, her diagnosis based upon a review of Plaintiff's medical records rather than only the report of symptoms listed on her disability application. (Doc. 17, pp. 9-10).

To the extent that Plaintiff challenges the Magistrate Judge's finding that there was no evidence that Dr. McCloud was not familiar with fibromyalgia because there also is no evidence that he was familiar with it, the Court overrules that objection. Plaintiff cites to the fact that Dr. McCloud referred to her condition as being "alleged," instead of recognizing it as an actual diagnosis even though a rheumatologist already had diagnosed her with fibromyalgia. (Doc. 18, p. 8). However, while Dr. McCloud noted that Plaintiff "alleges" fibromyalgia, he indeed noted she had a secondary diagnosis of fibromyalgia and concluded that she had a medically determinable impairment of fibromyalgia. (Tr. 502, 507). The Court thus cannot agree with Plaintiff that Dr. McCloud considered her fibromyalgia only to be alleged rather than recognizing it as a diagnosis, and therefore finds no error in this respect.

Plaintiff also contends that Dr. McCloud relied only on the physical examination in formulating his physical RFC conclusion; however, his RFC form indicates otherwise. The RFC form, completed on or about September 23, 2008, provides that the conclusions are to be based "on all evidence in file (clinical and laboratory findings; symptoms, observations, lay evidence; reports of daily activities; etc.)." (Tr. 502). It also provides that the assessor should ensure that he has "[r]equested appropriate treating and examining source statements." (Tr. 502). In Section A(6), Dr. McCloud references a "PE on 11/29/07" that indicates consideration of medical evidence of

record.  (Tr. 503).  Further, a later section provides that symptoms alleged by the claimant to produce physical limitations, and not otherwise addressed, are to be considered.  (Tr. 507). That section requires that the physician state whether "[t]he severity of the symptom(s) and its alleged effect on function is consistent, in [his or her] judgment, with the *total medical and nonmedical evidence*, including statements by the claimant and others, observations regarding activities of daily living, and alterations of usual behavior and habits."  (Tr. 507) (emphasis added).  In response, Dr. McCloud wrote: "Yes the severity of sx [sic] and their alleged effect on function is consistent with objective MER obtained."  (Tr. 507).  As such, Plaintiff's argument that Dr. McCloud relied on physical examination findings only and doubted her fibromyalgia condition is contradicted by evidence in the record.[1]  The Court therefore finds no error by the Magistrate Judge in finding the ALJ properly accorded "significant weight" to the physical RFC determination of Dr. McCloud.

## C. David Chiappone, Ph.D.

Plaintiff challenges the Magistrate Judge's conclusion that the ALJ did not err in giving "great weight" to the conclusions of Dr. Chiappone.  Specifically, she contends that although the Magistrate Judge was correct that the ALJ was not required to "reiterate each piece of evidence" that was consistent with the report of Dr. Chiappone, it was necessary to determine where the report fits into the ALJ's findings.  In particular, Plaintiff contends it is relevant to know whether the ALJ adopted Dr. Chiappone's

---

[1] To extent Plaintiff would dispute that the ALJ did not identify the objective evidence that supported the conclusions, the Magistrate Judge correctly noted in her Report that the ALJ summarized relevant objective evidence and was not required to reiterate each piece of evidence in the portion of his opinion concerning Dr. McCloud's opinion.  (Tr. 17-20).

credibility findings, and other findings that she contends are inconsistent with the ALJ's decision.

Having reviewed the objections in light of the ALJ's decision and Dr. Chiappone's findings, the Court finds that the Magistrate Judge correctly determined that there was no error.  Dr. Chiappone's report includes a summary of Plaintiff's activities.  (Tr. 483). The ALJ's analysis summarized the objective medical evidence concerning Plaintiff's activities, and details the inconsistencies in the evidence that the ALJ considered.  He was not required to reiterate those findings with respect to its endorsement of Dr. Chiappone's report.  To the extent that Plaintiff contends that the ALJ had to specifically state whether he accepted or rejected Dr. Chiappone's credibility findings, the Court disagrees and finds that the ALJ plainly articulated the evidence he considered in evaluating Plaintiff's credibility.  To the extent that Plaintiff also contends that the credibility assessment of Dr. Chiappone should have been adopted by the ALJ, the ALJ is required, as explained in more detail below, to make his credibility determination based upon the record evidence as a whole and that determination must be supported by substantial evidence in the record. It, thus, is more appropriate to consider the credibility issue in a subsequent section of this Opinion and Order.  For those reasons, the Court does not find that the Magistrate Judge erred in affirming the ALJ's decision to place great weight on Dr. Chiappone's report.

### D.  Consulting versus Treating Psychological Sources

The Magistrate Judge correctly noted the standards to apply in evaluating whether the ALJ followed the regulations in determining what weight to give a treating source's opinion.  Rather than repeat that standard, the Court incorporates it here.

10

Plaintiff challenges the Magistrate Judge's and the ALJ's understandings of Dr. Cheng's and Ms. Halicks' opinions as they relate to the "Paragraph C" criteria of Listing 12.04 (Affective Disorders).  She specifically claims that Dr. Cheng and Dr. Halicks opined that Plaintiff met the Listing diagnostic criteria and met the severity criterion for the "C" Criteria of Listing 12.04(C)(2), although the Magistrate Judge and the ALJ only considered whether she met the "C" Criteria of Listing 12.04(C)(1).  She contends that the finding is supported by her testimony at the hearing concerning living with her daughter and his four children, and her fiancé, which are supportive environments. (Doc. 18, pp. 12-13). Listing 12.04 provides, in relevant part, that an individual satisfies the listing when there is:

> [m]edically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration, or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate . . . .

20 C.F.R. § 404, App. 1 to Subpart P, Listing 12.04.

In his decision, the ALJ stated in regards to whether Plaintiff met a listing:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The claimant does not meet the "paragraph C" criteria of 12.04 because she has not had repeated and extended periods of decompensation; she is able to make adjustments without decompensation and is able to live independently.

(Tr. 17).  In determining the RFC formulation, the ALJ detailed the objective medical

evidence of record.  He then determined that:

> The undersigned give[s] great weight to Dr. Cheng and D. Halicks
> opinions as they are based on the medical evidence of record and
> consistent with the evidence of the claimant's activities of daily living.
> Insofar as these opinions support the findings of moderate limitations
> in social functioning and concentration, persistence and pace, the
> undersigned also [gives] great weight to Dr. Cheng and Dr. Halicks.
> The undersigned finds that they are treating sources and the
> longitudinal medical evidence not available to Dr. Chiappone
> supports these opinions.  . . .
>
> With regard to Dr. Cheng and Dr. Halicks other opinions:  the
> undersigned finds that there is insufficient evidence to support the
> finding that there were three episodes of decompensation and that
> the C criteria are met.  The finding that the C criteria is met
> contradicts the opinion of other treating sources, is not supported by
> the objective medical evidence of record, and is inconsistent with the
> evidence of the claimant's activities of daily living.  Further, the
> undersigned recognizes that these treating physicians are not
> familiar with the SSA regulations, as evidenced by the unsupported
> report of three episodes of decompensation and therefore, the
> undersigned does not give any weight to these opinions but gives
> great weight to the opinion of Dr. Orosz.

(Tr. 20).

Having reviewed the ALJ's decision, the Court finds that the ALJ considered the

opinion that Plaintiff satisfied "C Criteria" in Listing 12.04(C)(2), and that his decision not

to give the "C Criteria" opinion controlling weight is supported by substantial evidence.

The documentation of Dr. Cheng and Dr. Halicks does not demonstrate the existence of

clinical findings that plainly support a "residual disease process that has resulted in such

marginal adjustment that even a minimal increase in mental demands or change in the

environment would be predicted to cause the individual to decompensate."  Although

the documentation reflects findings of pervasive loss of interest in almost all activities,

sleep disturbance, agitation or retardation, decreased energy, difficulty concentrating or

thinking, distractibility, and pressures of speech, the treating sources note a rule out for bipolar disorder.  (Tr. 703, 719).  There also are notations of symptoms for Listing 12.06 for anxiety disorder and for Listing 12.08 for personality disorders.  (Tr. 705, 707, 721). However, the occupational adjustments and social adjustments do not show significant inabilities to adjust, other than in regards to her ability to behave in an emotionally stable manner.  (Tr. 713).  No clinical findings are listed to support the assessments, and her functional limitations are mild to moderate.  (Tr. 726).  There is no finding that Plaintiff satisfies the C Criteria for anxiety. (Tr. 727).

Plaintiff also does not dispute the Magistrate Judge's or the ALJ's finding that Plaintiff herself reported that she had no history of outpatient or inpatient psychiatric treatment, except being hospitalized for a nervous breakdown at least fifteen years ago. (Doc. 17, p. 14); (Tr. 17). Nor does she dispute the finding that there is no evidence that would support a finding that she has experienced repeated episodes of decompensation.  (Doc. 17, p. 14).  Further, other substantial objective evidence cited by the ALJ supports the ALJ's findings that she has no restrictions in activities of daily living, has moderate difficulties in social functioning, and has moderate difficulties regarding concentration, persistence or pace.  (Tr. 16-17).

Although Plaintiff contends that the "C Criteria" opinion was supported by Plaintiff's Hearing Testimony, that testimony appears to concern a "supportive environment," which either relates to the initial consideration of whether her symptoms or signs are currently attenuated by "psychosocial support" or to paragraph C(3), rather than to paragraph C(2) upon which the opinion at issue is based.  *See* Listing 12.04(C)(3) ("(3) Current history of 1 or more years' inability to function outside of a

highly supportive living arrangement, with an indication of continued need for such an arrangement").  Nevertheless, even if her testimony supported the opinion, it does not negate the substantial evidence that supports the ALJ's decision.

Accordingly, the Court cannot find that Plaintiff's argument demonstrates that the ALJ erred in not giving weight to the opinion of Dr. Cheng and Dr. Halicks in regards to the "C Criteria."  Her objection is therefore overruled.

### E.  Credibility

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers*, 486 F.3d at 247 (citations omitted).  In light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).  "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review."  *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record.  *Id.*  Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the

14

claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Here, the Court finds no error in the credibility assessment, as it has substantial support in the record. The Magistrate Judge correctly found that the ALJ provided a thorough analysis of the case record and detailed specific inconsistencies that led him to discount her credibility. The ALJ correctly recognized that at the time Plaintiff filed for social security and disability benefits in June 2008, the medical records reflected that her activities included playing games with her grandchildren, cooking, decorating, eating out, watching movies, going to the zoo and the museum, shopping and family vacations. (Tr. 18, 522-23). She also reported to a health provider that she walked thirty minutes every other day. (Tr. 18, 591). However, in November 2008 when she completed her Function Report, she reported her limitations in her daily activities to be more severe. (Tr. 18, 294-301). The ALJ properly considered those reports to be inconsistent.

The medical opinions that Plaintiff references also do not demonstrate the limitations that Plaintiff reported in November 2008. Her argument that those medical opinions are consistent with her alleged limitations rests upon a characterization of the medical opinions that does not comport with the ALJ's findings and conclusions as to those medical opinions, which this Court has found above to be supported by substantial evidence. The Court therefore re-incorporates its above analysis here. Moreover, the Magistrate Judge correctly recognized that the ALJ properly considered Plaintiff's relatively conservative treatment history, as well as the inconsistencies in the

15

reported effectiveness of her medications, in assessing Plaintiff's credibility and her pain level.  (Doc. 17, p. 17).  Plaintiff's allegations that she was "ambushed" by the credibility assessment are not well taken, as all of the information considered was part of the record and was properly considered by the ALJ in evaluating credibility based on the record as a whole.

Likewise, Plaintiff's argument that the ALJ improperly discounted her credibility because of her marijuana and alcohol use misreads the ALJ's decision.  The ALJ found substance abuse to be a severe impairment.  In determining whether the impairment was disabling, the ALJ properly considered the credibility of her subjective reports. Rather than discounting her credibility *because of* her marijuana and alcohol use, the ALJ discounts her credibility because of the stark *inconsistency* between her reports of substance abuse to the health care sources and the medical records.  The information upon which the conclusion was based was part of the case record.   Therefore, considering that the ALJ is permitted to make his credibility determination "based on a consideration of the entire case record," and her inconsistent reports of substance abuse shed light on her credibility, the Court declines to find that Plaintiff was "ambushed" by the ALJ's consideration of that evidence.

Plaintiff's reliance on *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) does not alter this Court's conclusion because the facts in that case are plainly distinguishable.  As Plaintiff correctly points out, the *Sarchet* court stated, in part:

> If the administrative law judge believed the medical reports that found that Sarchet has enough strength to work and disbelieved Sarchet's own testimony, this would compel the denial of the application for benefits.  We cannot say that this combination of belief and disbelief would be unreasonable but we cannot uphold a decision by an administrative agency, any more than we can uphold

16

> a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.

*Id.* at 307.   The reason why the accurate and logical bridge was absent in that case was because the administrative law judge's opinion contained "a substantial number of illogical or erroneous statements that bear[ed] materially on her conclusion that Sarchet is not disabled."  *Id.*  In particular, the circuit court pointed out specific instances in the record that demonstrated a "pervasive misunderstanding of the disease" by the administrative law judge due to her criticism of the type of specialist consulted, the depreciation of the gravity of the disease due to the lack of objectively discernible symptoms, such as the swelling of the joints which is not a symptom of fibromyalgia, and the misunderstanding of the medical term "nonspecific."  *Id.*  In addition to that "pervasive misunderstanding of the disease," the administrative law judge incorrectly described the plaintiff's testimony and noted inconsistencies where none existed, misunderstood the opinion of the vocational expert, and made a number of unfounded sociological speculations, including, among other things, undermining the plaintiff's credibility because she had a poor work history and reported a heart attack when she only had a rapid heartbeat.  *Id.* at 307-08.  In other words, the ALJ's opinion was replete with errors.

In this case, for the reasons previously explained, the Court does not find that the ALJ's opinion reflected a "pervasive misunderstanding of the disease" or contained a substantial number of illogical or erroneous statements that bear materially on his decision.  Instead, the Court finds that the ALJ thoroughly analyzed the case record, specifically identified the reasons for the weight given to the medical opinions and the

17

testimony of Plaintiff, and properly supported his decision with the case record. Accordingly, for each of the reasons set forth above, the Court finds that there was no error by the Magistrate Judge or the ALJ.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Objections (Doc. 18) are **OVERRULED** and the Magistrate Judge's Report (Doc. 17) is **ADOPTED**.  Consistent with the Report and this Opinion and Order, the decision of the Commissioner to deny Plaintiff DIB and SSI benefits is **AFFIRMED**.  This case shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court